998 F.2d 1008
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In Re: A. H. ROBINS COMPANY, Incorporated, Debtor.
Robert E. KEENAN, Doctor, Claimant-Appellant,
v.
A. H. ROBINS COMPANY, INCORPORATED, Debtor-Appellee.
In Re: A. H. ROBINS COMPANY, Incorporated, Debtor.
Robert E. KEENAN, Doctor, Claimant-Appellant,
v.
A. H. ROBINS COMPANY, Incorporated, Debtor-Appellee.
 Nos. 92-2963, 92-2975.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 9, 1993.
July 6, 1993.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. Robert R. Merhige, Jr., Senior District Judge. (CA-85-1307-R)
 Argued: James M. Minor, Jr., Minor, Saunders, Cary & Patterson, Richmond, Virginia, for Appellant.
 James S. Crockett, Jr., Mays & Valentine, Richmond, Virginia, for Appellee.
 On Brief: Paul R. Mack, Minor, Saunders, Cary & Patterson, Richmond, Virginia, for Appellant.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN and LUTTIG, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Robert E. Keenan, M.D., brings these appeals from an order of the district court granting summary judgment to A. H. Robins Company on Keenan's claims in the Robins bankruptcy proceeding.[1] Finding no error, we affirm.
 
 
 2
 Dr. Keenan was hired by Robins in April 1979 as the company's Director of Clinical Investigation, and he eventually attained the position of Vice President, Office of Medical Research. Shortly after he began work at Robins, he conceived of using the drug metoclopramide, or Reglan, to prevent vomiting by chemotherapy patients, and he reduced this idea to practice on December 17, 1979. J.A. at 168. Robins applied for a "use patent"[2] on Dr. Keenan's invention in 1983. A patent, since known as the "Keenan Patent," was issued on August 20, 1985. Dr. Keenan was no longer employed by Robins at the time this valuable patent issued, however, having been terminated on January 2, 1985, for disobeying company rules and disregarding the corporate hierarchy. See id. at 220-23.
 
 
 3
 Robins filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Virginia in 1985. Dr. Keenan filed the first of his three proofs of claim in this proceeding in 1986, claiming to be entitled to monetary damages stemming from his discharge. On July 7, 1987, Keenan filed a second proof of claim, alleging that the Keenan Patent was his and claiming that Robins owed him over $24,000,000 for infringing upon it. Id. at 35. One month later, Dr. Keenan was retained by Morgan & Finnegan (M & F), a New York law firm hired by Robins to defend the Keenan Patent in litigation.[3] Although M & F had gained approval from the bankruptcy court to represent Robins in the litigation, Dr. Keenan neither sought nor obtained such approval. Nonetheless, over the next several years, Dr. Keenan provided services to M & F as an advisor, consultant, and expert witness. Despite repeated requests from M & F, however, he refused to submit detailed records of the time he spent working in the litigation, which eventually was resolved favorably to Robins. When he did not receive payment for his services, Dr. Keenan filed a third proof of claim in the bankruptcy proceeding, claiming to be owed $287,000 under the M & F consulting agreement.
 
 
 4
 Robins objected to Dr. Keenan's claims and, after the claims had been consolidated before the district court, moved for summary judgment. The district court granted the motion. The court first observed that Dr. Keenan's three filings claimed damages on four distinct grounds: (1) that his discharge violated federal antidiscrimination laws, namely the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634; (2) that his discharge was wrongful because it violated Robins' own policies; (3) that Robins had infringed against the Keenan Patent, which Keenan purported to own; and (4) that Robins had failed to pay for services rendered on its behalf by Keenan under the M & F consulting agreement.[4]
 
 
 5
 The district court first held that Dr. Keenan's age discrimination claim was barred by his failure to file a charge with the Equal Employment Opportunity Commission within 180 days of the allegedly unlawful act, a prerequisite to a party's ability to seek relief in federal court. See 29 U.S.C. § 626(d)(1). Keenan's other claim stemming from his discharge also failed as a matter of law, concluded the district court, because the internal "policies" that Keenan claimed Robins had violated by terminating him for cause did not apply to Keenan, and, in any event, were not contractually binding. See J.A. at 153-54, 318-19. The district court then determined that Keenan's patent claim was meritless. Because the Keenan Patent had been reduced to practice after Keenan began work at Robins, and the employment agreement executed by Keenan specifically provided that all inventions conceived of during his employment at Robins and related thereto were the sole and exclusive property of Robins, Keenan had no rights in the Keenan Patent. See id . at 79-81, 168.
 
 
 6
 Last, the district court held that Keenan's claim under the M & F consulting agreement was barred by his failure to comply with the requirements placed on "professional persons" by section 327(a) of the Bankruptcy Code.[5] Since Dr. Keenan had materially assisted in the protection of a significant estate asset, the Keenan Patent, the court ruled that his services were of central importance to the administration of the Robins' estate, so that he was a" professional person" within the contemplation of section 327(a). Because Keenan claimed ownership of the Keenan Patent, and therefore held an interest materially adverse to the estate at the time he rendered his services, and because Keenan had never obtained approval from the bankruptcy court to assist Robins in the Keenan Patent litigation, the district court held that Keenan failed to meet the two requirements set forth in section 327(a), that he be disinterested and have court approval.[6] He therefore was not entitled to compensation for services performed under the consulting agreement. Because all of Dr. Keenan's claims thus failed as a matter of law, the district court granted summary judgment to Robins.
 
 
 7
 We have read the briefs, heard oral argument, and given thorough consideration to Dr. Keenan's contentions, including those presented in a pro se capacity. Agreeing with the district court that Keenan's age discrimination claim is barred by failure to exhaust administrative remedies, that his wrongful discharge and patent claims are foreclosed by the terms of his employment agreement with Robins, and that Keenan was a "professional person" for purposes of section 327(a) who was not disinterested and who failed to obtain court approval of his services, we affirm on the reasoning of the court below.
 
 AFFIRMED
 
 
 [1]
 The judgment under review is from a proceeding retained in the district court. We therefore refer to the district court's opinion and order in this case, although that opinion and order were issued in the United States Bankruptcy Court. In re A. H. Robins Co. (Claim of Dr. Robert E. Keenan), No. 85-1307-R (Bankr. E.D. Va. Oct. 2, 1992)
 
 
 [2]
 A "use patent," rather than protecting a newly invented product, protects a new use of an existing product
 
 
 [3]
 M & F apparently was unaware that Keenan previously had asserted ownership of the Keenan Patent in the bankruptcy proceeding. Keenan's proofs of claim were filed along with thousands of others stemming from litigation over the Dalkon Shield, and were not separated from this unrelated mass of claims for several years
 
 
 [4]
 In the district court and before this court, Keenan was represented by counsel only on his consulting agreement claim, choosing to proceed pro se on the remaining claims
 
 
 [5]
 § 327(a) provides that"the trustee [or the debtor in possession],with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee." 11 U.S.C. § 327(a)
 
 
 [6]
 The court further noted that retroactive approval of Dr. Keenan as a "professional person" would be inappropriate because he had not alleged any extraordinary circumstances that could excuse his prior failure to obtain approval, and because, in any event, Keenan's holding of an interest adverse to the estate barred his approval, retroactive or otherwise